The Chancellor.
The object of this suit is to recover an undivided share' or interest which the plaintiffs claim, as tenants in common, in a lot of land in the city of New-York, devised by Casper Samler to the children of his daughter Barbara if she should have any; and to his executors or trustees for her use during her life. And the only question in the case arises upon the construction of the clause in Samler’s will, limiting the fee in the premises in case of her death without lawful issue. At the death of the testator, in January 1810, he had five children, and one step-child, the daughter of his wife by her first husband, who, together with his wife, survived him.
By the first clause of his will he gave to his wife the use and income of his farm for life. And after her death he devised a part of the farm, in six distinct parcels or allotments, containing different quantities of land, to his grandchildren in fee; describing the children of his step-daughter as grandchildren in this clause of his will, and devising one allotment to the children of his step-daughter, Margaret Grenzebach, and the other five allotments to the children of his son John, and of his daughters Susannah, Elizabeth, Barbara and Mary, respectively. He also gave to the parents of those whom he described as his grandchildren in this clause of his will, life estates in the allotments so devised. The residue of his farm and all the rest of his real estate he directed his executors to sell, and that the proceeds thereof should be considered personal estate, and be divided among his legatees, as the rest of his personal estate was by his will directed to be divided.
The next clause of the will which is material to be considered, relates to the disposition of his personal estate, and is as follows: ■“ The remainder of my personal estate I direct to be divided into six equal shares, which I give as follows; to my step-daughter Margaret one share, to my daughter Susannah one share, to the children of my daughter Elizabeth one share, to the children of my daughter Mary one share, to the children of my daughter Barbara one share, and to the children of my son John one share.” And the testator by this clause of *307 his will also gave to his three daughters last named, and to his son, life estates in the income of the shares of the personal estate bequeathed to their children respectively.
If the will had stopped here, it is evident that neither the step-daughter nor her children would have been entitled to any part of the real or personal estate devised or bequeathed to the children of Barbara Samler, upon the subsequent death of the latter without having had any issue. But the premises in controversy, and the interest in the proceeds of the other real estate of the testator which was intended for her children, would have descended to the heirs at law of the testator as real estate or an interest in real estate, not effectually disposed of by the will. (Hawley v. James, 7 Paige's Rep. 213; Leigh & Dalz. Eq. Conv. 99; Ackroyd, v. Smithson, 1 Bro. Ch. Ca. 503.) And the one sixth of the personal estate, which was intended for the children of Barbara after her death, being undisposed of by the will, would have gone to the next of kin. (See Page v. Page, 2 Stra. Rep. 820: Bagwell v. Dry, 1 P. Wms. Rep. 700.)
But the testator made a further provision, to cover the contingency which has happened. And under that clause of the will the plaintiffs claim one fifth of the lot specifically devised • to the children of Barbara by the first clause, if she should have any. That clause is as follows-: “And it is my further will, that in case of the death of any of my said children or of my said step-daughter, without lawful issue, that then the share or portion of my estate which by this my will would have gone to such issue, be divided equally among the survivors of my children or grandchildren, in the same proportion as hereinbefore mentioned." It is evident that the term proportion, in this limitation over, does not refer to the specific devises of particular lots to the children of the testator’s son and daughters, and step-daughter, in the first clause of the will. For the lots thus devised contain different quantities of land, and do net appear to have been of equal value. But it was evidently intended to refer to the division of the testator’s pergonal estate, as provided for in the next preceeding clause *308 of the will. And I am inclined to think it was intended to refer to the quantity of estate which the devisees in remainder were to take in their respective shares thereof, as well as to the proportions of each in the entire fee. That is, if the stepdaughter should die without issue, leaving the testator’s five children surviving her, Susannah, who had an absolute estate in her one sixth of the personal property and of the proceeds of the real estate not specifically devised; should take the same absolute interest in her equal share of the personal estate bequeathed to the step-daughter absolutely, and in the lot specifically devised to the step-daughter and her husband for life with remainder in fee to their children; that each of the other four children should lake an estate for life in another equal fifth thereof, with remainder to their children in fee, as in the preceding clause of the will; and that if Susannah died leaving issue surviving, her children should take the equal fifth to which she would-have been entitled if living.
The proportion of the entire residuary estate which each child of the testator was to take either for life or in fee was one sixth. But he could not have intended that if one of them died without issue, the survivors should each take hut one sixth of that share; leaving the remaining one sixth or two sixths, as the case might be, undisposed of by the will. To adopt the figure used by one of the plaintiffs’ counsel, therefore,, this temple must in any event contain a less number of columns in rear than it originally did in front. For as there were six original takers, if one of them died without issue, there could only be five to take that portion of the estate, even if the stepdaughter, or her children, was included in the class which was to take that share of the property. Correct architectural taste would undoubtedly require that the materials of the column which had fallen by the ravages of time should be used to strengthen the five remaining columns equally, instead of being added to four only, and leaving the fifth of its original dimensions. It must be recollected, however, that this testator did not construct the other parts of his temple according to strict architectural taste. For the columns of his first row *309 were of different diameters. And though they were all of the same height, from the bottom of the base to the top of the abacus, their proportions were different; the contingent remainders in fee to some of the grandchildren having the life estate of one parent for a base with an exterior support by a buttress of trustees, while the remainder to the children of John was based upon the lives of both of their parents, supported by the same buttress as the others. The columns of his second row, constructed from the proceeds of his residuary real and personal estate, are, it is true, not only of the same height, but also of the same diameters. But here again we find the same want of architectural symmetry. For the columns of Susannah and of the step-daughter are Grecian Doric, having no bases whatever; while the columns of the children of the testator’s other three daughters are of the Tuscan order, resting upon the life estate of one parent for a base, as on a single torus. And the column of John’s children is Roman Doric, based upon the lives of both parents; the life estates of the father and the mother forming the torus and the astragal upon which the column of their children’s interest in that part of the testator’s property stands. Again, by a codicil, both of the columns of John’s children were turned into modern Gothic by the binding up of the father and mother and children together in the lower section of the trunk of the column, supported as before by the buttress of trustees, and making the column to assume a form implying flexure and ramification ; which is a distinguishing characteristic of that order of architecture. With these strong evidences of the testator’s want of architectural taste, and of the slight developement of the bump of order which the cranium of that honest German burgher must have exhibited, it would I think be unsafe to place our decision in this pase upon the hypothesis that he undoubtedly intended to construct the temple of his bounty upon correct architectural principles: or to distribute his estate between his children and his step-daughter, and their children, in strict mathematical proportions.
But to leave this figure and return to the principles of legal cpnstruction. The testator has, in his will, shown that the step *310 daughter and her children were placed upon at least as favorable a footing as any of his own children and their descendants, in the general disposition of his property. It is. difficult to conceive, therefore, why he should have made any difference between them in this contingent limitation over of the shares of such of them as might happen to die without leaving issue. It' is. not improbable then that he intended to put them all upon the same footing of equality in the last clause of his will; and that the words “ and step-daughter ” after “ the survivors of my children ” have been left out of this clause 'by a mistake of the scrivener. There is nothing within the four corners of the will, however, to justify the court in saying that such a mistake has actually occurred. The construction of this clause of the will, therefore, must be 'made upon the supposition that the language used in the will is what the testator intended to use to express his meaning in the disposition of his property. As a general rule in the construction of wills, the testator must be presumed to have used words in their ordinary or primary sense, unless from the context of the will it appears that he probably must have used them in some secondary sense; or where, by reference to extrinsic circumstances, which existed at the time of making the will, or which must exist in the event or at the time contemplated by the testator, the use of the words in their primary sense would have rendered the provision of the will insensible or inoperative. The word children in common parlance does not include step-children, or grandchildren, or any others than the immediate descendants, in the first degree, of the person named as the ancestor. Here the provision of the will is just as sensible, by excluding the step-daughter from a share in the portion of the estate devised, to the children of Barbara, if she should have any, as it would be if the step-daughter had been included as one of the testator’s children; except that the shares of the brother and two surviving sisters, and of the children of Susannah, who died before Barbara, will be larger than they would have been if the step-daughter had been included. The step-daughter, who survived Barbara, could not take any interest in the ultimate limitation over of this portion of the *311 estate, as one of the children of the testator. Besides, the will itself clearly shows that the testator used the word children in its primary sense merely. For he always calls Margaret his step-daughter, and uses the words “ my step-daughter,” in connection with “ my children,” or “ my son and my daughters,” whenever'he refers to the whole six, between whom, and whose children, the real and personal estate was to be divided and apportioned by the previous clauses of the will.
But even if the step-daughter had been named in this last clause of the will, as one of the persons who was to take by survivorship, it would not have enabled the plaintiffs to recover in this suit on the original pleadings. For she survived Barbara, and her husband John N. Grenzebach would upon her death have been entitled to a life estate in the whole of her fifth of the premises in controversy, as tenant by the curtesy ; and would also have been a tenant in common with his children in the ultimate fee, as the heir at law of his son William, who survived his mother. It appears by the special verdict that John N. Grenzebach was living at the commencement of this suit. The heirs at law of his deceased wife could not therefore maintain an ejectment suit, during the continuance of his life estate as tenant by the curtesy; although she had been the owner of one fifth of the lot in question at the time of her death. (Adair v. Lott, 3 Hill’s Rep. 182.) It is true, the supposed tenant by the curtesy was one of the plaintiffs in the courfrbelow; and therefore might have been entitled to a verdict and judgment for his life estate, if there had been any proper count in the declaration for that purpose. The only count, however, is upon a joint title in himself and in his surviving children. Previous to the revised statutes, when ejectment suits were brought in the name of a nominal plaintiff, either upon joint or separate demises from the real parties by whom the suit- was instituted, it was well settled that upon a joint demise from two or more persons, the plaintiff could not recover by showing a title to the premises in a part of them only. (Treport’s case, 6 Coke’s Rep. 14; Taylor v. Taylor, 3 A. K. Marsh. Rep. 19; Doe v. Butler, 3 Wend. Rep. 149.) And though the form of the ejectment suit is now changed, by substituting an allegation of *312 title in the real plaintiff, instead of the fictitious demise from him to the nominal one, I apprehend that upon a count stating a joint title in two or more plaintiffs, they must still show that each of them had such a present interest in the premises as would have enabled them to join in a demise. But this difficulty was remedied by the stipulation of the parties. •
If the step-daughter could not take an interest in the premises, under this clause of the will, as one of the surviving children, could her children take an interest in the premises, during her life, as surviving grandchildren of the testator 1 I have before said that the term proportion in this clause of the will was probably intended to refer to the quantity of estate Which the devisees in remainder were to take, as well as to their distributive proportions of the entire fee. For by the preceding clause the proportion of each of the testator’s children in the personal estate was one sixth; to four of them for life, with remainder to their children, and to the other absolutely. I think the partitive proportions which the surviving children or grandchildren of the testator, or both, were to take in the share of the one who had died without issue, are indicated by the direction that it should be divided equally among the survivors of his children or grandchildren. But then that equality, both as to the children and grandchildren, is qualified by what immediately follows—“ in the same proportion as hereinbefore mentionedthat is, in proportion to their respective interests in the testator’s residuary personal estate. The children of John and FAizabeth and of Mary respectively had an interest in the personal estate, as remainder-men in fee after the termination of the life estates of their parents therein. And therefore the children of each collectively would be entitled to a similar interest, as surviving grandchildren of the testator, in the share of their aunt who died without issue ; whether their parents had or had not survived her. But as the share of Susannah in the personal estate was absolute, the testator could not have intended that if she and her children both survived her sister, who. should die without issue, such children, by this description of his surviving grandchildren, should take a distributive share in that portion of the estate. . They can only *313 claim, therefore, as the survivors of their deceased mother, the' interest which she would have been entitled to if she had survived her sister Barbara. So as to the children of the stepdaughter, who jivas living at the death of Barbara without issue. They had no interest in the personal estate of the testator, either as representatives of their mother or otherwise, when this limitation over to the testator’s surviving children or grandchildren took effect; and could not therefore claim any proportionate part of the share of Barbary, either in the premises in question, or in the personal estate, even if they answered the description of grandchildren of the testator. ■ For it was not intended by him that all of his surviving grandchildren, or that each class of them, should share equally with his surviving children under this clause of the will. And as the step-daughter did not answer to the description of one of the testator’s surviving children, and could not in any event be entitled to a portion of the share of Barbara, either in the real or personal estate, it was impossible that her children should upon any contingency take any interest in that share by representation.
I have therefore arrived at the conclusion that the plaintiffs took no interest in the premises in question under the will of Casper Samler. And that the judgment of the supreme court was right, and should be affirmed.
Senator Franklin also delivered an opinion in favor of affirming the judgment of the supreme court.
Hard, Senator.
The testator devised his farm to his grandchildren, and denominated the children of his step-daughter Margaret, his grandchildren. In his will he made the same provision for his step-daughter, in the distribution of his personal estate, as for his other children, but in the last devising clause he provided as follows; “ And it is further my will that in case of the death of any of my said children, or of my said step-daughter, then the share or portion of my estate which by this my will would have gone to such issue, be divided equally *314 among the survivors of my children or grandchildren in the same proportion as hereinbefore mentioned.”
It is upon the construction of this last clause,that the main question in the present case arises. One of the daughters, Barbary, died without issue. The contingency contemplated in the will therefore happened, and the question is, whether Margaret, the step-daughter, or her children, are survivors within the intention of the testator? If Margaret be intended, then the plaintiffs (Margaret being dead) are entitled to recover under a title by descent as her heirs. If she be excluded and her children included in the term grandchildren, then they take by a direct devise. But if neither are included under that term, then the plaintiffs are not entitled to recover, and the judgment below must be affirmed.
This leads us to inquire who the testator intended to include under the denomination, of grandchildren ? Or, to pirt the question more explicitly, did he intend to include the children of Margaret under that denomination ? The learned judge, in delivering the opinion of the court below, admitted that, for the purposes of the first devising clause, her children were called grandchildren, and that the testator intended this word tp include them as such.
This is the main devising clause, as in it the testator has disposed of his entire real and most of his personal estate. It is here therefore that we must look for the testator’s testamentary definition and application of the . term grandchildren. It is admitted on all sides that he was at liberty to affix bis own definition to the words employed by him in designating and classifying his devisees, unless this would involve a legal repugnance. : and when he has thus adopted his glossary, it must, prevail throughout the instrument, unless in a- subsequent part he expressly excludes it. (Shelley v. Bryer, 1 Jac. R. 207.) The term grandchildren, therefore, must comprehend the same class of persons in the last as in the first devising clause, and this would make the children of the step-daughter Margaret co-survivors of his deceased daughter Barbary with his other children and grandchildren.
*315 But it is contended that in the same clause where the glossary is first used, there are terms of express limitation, confining the use of the word grandchildren, as comprehending the children of Margaret, to this particular devise. The learned judge who delivered the opinion of the court below, seems to have supposed that the explaining terms “ to wit,” introduced after the word “ grandchildren ” and “ farm,” at the beginning of the first devising clause, were intended to designate more explicitly the class of persons that were to take under the denomination there used. In this I think he was mistaken. There are other obscurities embarrassing this particular portion of the will which were much more needful of explanation, and to aid which the words “to wit” were undoubtedly introduced.
The testator had 'divided his real estate, consisting of his farm of forty-seven acres, into five portions or lots, which he numbered one, two, three, four and five. Four of these divisions contained a trifle less than six acres each, which he devised to the children of his step-daughter and of three of his other daughters: and the other division he had subdivided into three portions, one of fen acres and another of about six, which he gave to the c.n dren of his son John, and of bis daughter Barbary, if she should have any; leaving. a residuary portion of his real estate, containing a number of acres, undisposed of Arid as he had given the greater part to his grandchildren, he intended, as appears in a subsequent clause, to distribute this residuary portion among his children. If, therefore, according to the hypothesis of tne learned judge, that particular devise had terminated with the word “ farm,” it would have carried over the whole real estate to his grandchildren. To ..prevent this, it became necessary, therefore, to explain what he meant by farm, and to render his object clear and his whole devise consistent, he added the words “ to wit,” and then pointed out the specific quantity that each class of grandchildren should receive.
It is admitted that, as a legal proposition, the explanation that followed saved the rights of Margaret’s children, but it requires an effort of the mind to suppose that it was introduced for that *316 purpose; for the testator must he presumed to have used the word “ grandchildren ” according to his sense of its legal import, or he would have made use of terms that would not have required circuity of language to make himself understood. The presumption therefore is, that the testator used the term “ grandchildren ” to include the children of his step-daughter, in ignorance of its limited application: but from the necessity of recurring in a specific manner to the children of Margaret, in explanation of another subject embraced in' the devise, we are sufficiently informed of his meaning and intent; and therefore, although it be true that he used language erroneously, yet he is saved from its consequences by the old maxim, “ mala grammatica non vitiat chartam. (a)
But after the introduction of the word “grandchildren” in the first devising clause of the will, it is not found again or even referred to until used to designate the persons that may take in right of survivorship: and here again it is used in the same general and unlimited sense. Nothing appears in any part of the will to limit or restrict its application to a class of persons less numerous than that to which it is applied in the first clause; and it is preposterous to contend that any limitation or restriction can be implied short of the introduction of some express term of limitation. In the absence of this, the same definition must attach wherever the word occurs in the same instrument. (Shelly v. Bryer, 1 Jac. R. 207.) The inference therefore is irresistible, that the testator intended to use the word “ grandchildren,” in the last clause, to include the same description of persons to which It extended in the first.
The court below was of a different opinion, however, holding that the word was restricted to its ordinary technical import, after' its use in the first clause. And to sustain this view a number of cases were referred to from the English books, the principal one of which has already been cited. I *317 allude to Shelly v. Bryer, (1 Jac. R. 207.) As this case, in the estimation of the learned judge who pronounced the opinion of the court below, “ is more material to the case in hand ” than the. rest, a brief review of it may not be amiss.
The testator in that case bequeathed his estate to trustees with directions to .sell it and invest the proceeds in government securities, the annual interest to be paid to Susannah Shelly, his sister, during her life; and after her decease, the residue to be divided equally between his nephews and nieces. Subsequent to the execution of this bequest, Harriet Shelly, the plaintiff, a grand-niece of the testator, was born. By a codicil he bequeathed to the plaintiff, whom he called his mece, £500 over and above her share, after the death of his sister, referring in the codicil to that provision in the main devise creating the remainder to his nephews and nieces. At his decease there were several nephews and two grand-nephews living, but no niece or grand-niece except the plaintiff. The tenant for life, Susannah, died ten years after the decease of the testator, leaving several grand-nephews and grand-nieces surviving who were born after the death of the testator. On the distribution of the estate, the plaintiff, under the testamentary denomination of niece, claimed a distributive share by virtue of the codicil, and the question was whether she rvas entitled to take as' one of the legatees. On the hearing, Sir Thomas Plumer, master of the rolls, confessed his embarrassment in arriving at a satisfactory conclusion. He conceded that the testator, by calling the plaintiff, his niece, had made her so in law: but added : “ The difficulty is, that if the words are to be extended with respect to the plaintiff, the same must be done as to the other great nephews and great nieces, and both the classes, including parents and children, must take together under the same denomination. But it would be contrary to the authorities to interpret a term having an appropriate application to one class, as extending to two classes, comprising both parents and children.” The plaintiff was accordingly allowed only the £500.
• That case was decided against the claimant upon the well settled rule, that where the intention of the testator, if followed *318 out, would lead to a legal repugnance, and this can be avoided by a return to the natural meaning of words, their artificial import shall be rejected. It was conceded that under other circumstances the secondary use of the word “ niece ” would have determined its legal import; and although the use as applied to a grand-niece was found for the first time, and the only time, in the codicil, it would still have extended the testamentary claim of the grand-niece to an equal right with the other nephews and nieces in the estate in remainder. But to admit it there, would have presented the strange incongruity of including persons in different degrees of relationship, such as parents, children, uncles, nephews &c., under the same denomination; and therefore propter necessitatem the general rule could not apply. No such circumstances embarrass the case at bar ; and therefore, by stripping that case of them, it is rendered authority decidedly favorable to the plaintiff in error. It corroborates the most important principle contended for by him, viz. that the definition adopted by the testator, in describing the persons who are to take, fixes the legal import, under the exceptions just stated, for the purposes of his devise.
If the views here presented are correct, there can be no doubt that the testator intended, under the word “ grandchildren,” used in the last devising clause, to include the children of Margaret. But whether the plaintiffs shall take by a direct devise, or whether their claim rests upon another species of title, is to be ascertained by the settlement of a further question raised in this case.
In the last devising clause of the will the testator provides that, in case of the death of one of his legatees, without issue, the portion which such issue would have taken shall pass’to the survivors of his children and grandchildren. Was Margaret, the testator’s step-daughter, intended to be included under the denomination of children ?
There is certainly much inferential evidence disclosed by the will of the testator’s intention to provide for Margaret as one of his children; but so far as words represent intentions, the legal import makes strongly against her claim. True, he *319 starts with the apparent intention of making equal provision in all respects for Margaret and his own children. In the most important provision he calls her children his grandchildren, and treats them as such throughout the will. In creating the survivorship in the last clause, they are included as his grandchildren. So too in the provision made for his children he does not forget to distribute to her a portion equal to the rest, in the residuary portion of his real estate and in his personal property. But in all these provisions he contradistinguishes her from his other children by the truly descriptive name and style of stepdaughter"; and this he does in every place until he comes to the clause creating the contingent remainder, where, in the use of the terms designating the survivors, the word children is used, but the term step-daughter is omitted. The strict legal and proper construction of the clause would clearly exclude Margaret from the right of survivorship.
Whatever might have been the design of the testator, and however strongly and plainly his intention may be indicated in other portions of the will to include Margaret as one of his children, for the purposes of the right of survivorship, the terms used are too strong and unequivocal to admit of a construction different from their legal import.
The plaintiffs have therefore a right to recover under a title derived directly from the devise, and the judgment below should be reversed..
Hopkins, Senator.
The case is shortly this. The testator, after _ a life estate to his wife, devised his farm to his “ grandchildren,” to wit, to the children of his step-daughter Margaret one parcel, to the children of his daughter Susannah one parcel, to the children of his daughter Elizabeth one parcel, to the children of his son John another parcel, to the children of his daughter Barbara, if she should have any, another parcel, and to the children of his daughter Mary, if she. should have any, another parcel. After other provisions, the testator further wills that in case of the death of any of his said children, or of his said step-daughter, without lawful issue, the share of his *320 estate which by his will would have gone to such issue shall be equally divided among the survivors of his children or grand-: children, in the same proportion as thereinbefore mentioned.
It is conceded that the testator has declared that by the term “ grandchildren” in the first clause, he means to include the children of his step-daughter, and that they must take under that clause; but it is denied that they take any thing under the latter clause. The testator having in the commencement of his will declared what he means by the use of certain words, I see no reason why the same meaning should not be attached to the same words throughout the will, unless he-has declared a different meaning to be given to them in other places. If the latter clause had followed the first in immediate connection, as I think it might, without affecting the general purpose as regards the real estate, the question could hardly have arisen. The latter clause provides for the disposal of the property mentioned in the first clause, in case of the death of any of his children or of his step-daughter without issue’; and I see no reason to suppose that the testator intended to attach a different meaning to the words used in the last clause from those used in the first. I discover no reason why a different meaning should be given because, for convenience in drawing the will and to include the contingent disposition of the personal property, the latter clause is disconnected from the former.
The expression “ in the same proportion as hereinbefore mentioned,” used in the latter clause, cannot so well be explained upon any other view of the case. The share which upon the death of any party would go to others could not go in the same proportions, that is of sixths previously mentioned in regard to' personal property; for the division could only be into fifths or some less shares. I think the expression was intended to indicate that the children of his step-daughter were to be included among his grandchildren in the same manner as thereinbefore mentioned.
A difficulty was suggested in my mind arising out of the pleadings, but I discover that it is avoided by a stipulation contained in the bill .'of exceptions that judgment be rendered as *321 the rights of the parties may appear, without being restricted by the pleadings.
With the views I have expressed of the intention of the testator as they appear in the will, I think the judgment below should be reversed.
Senator Root also delivered an opinion in favor of reversing the judgment of the supreme court.
On the question" being put, “Shall this judgment be reversed ?” the members of the court voted as follows:
For reversal: Senators Dixon, Ely, Hard, Hopkins, Lawrence, Lott, Putnam, Rhodes, Root, Sherwood, Strong, Works and Wright—13.
For affirmance: The Chancellor and Senators Bart-lit, Bockee, , Chamberlain, Denniston, Deyo, Franklin, Mitchell, Platt, Porter and Scott.—11.

 For this maxim and its application see Broom’s Legal Maxims, 298, 9, and the cases there cited.